[Cite as *Nelson v. State Farm Fire & Cas. Co.*, 2023-Ohio-1982.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Nicholette Nelson, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 22AP-176 |
| v. | : | (C.P.C. No. 18CV-8138) |
| [State Farm Fire & Casualty Company] et al., | : | (REGULAR CALENDAR) |
| | : | |
| Defendants-Appellees. | : | |
| | : | |

D E C I S I O N

Rendered on June 15, 2023

**On brief:** *Nicholette Nelson*, pro se.

**On brief:** *Gallagher, Gams, Tallan, Barnes & Littrell L.L.P.*, and *Laura Plank Founds*, for appellee State Farm Fire & Casualty Company. **Argued:** *Laura Plank Founds*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Nicholette Nelson, appeals a judgment of the Franklin County Court of Common Pleas granting defendant-appellee State Farm Fire & Casualty Company ("State Farm") a directed verdict. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On September 27, 2018, Nelson filed suit against State Farm, Catherine Palmer, and Jonathan Haas. In the complaint, Nelson alleged that on February 11, 2015, a vehicle driven by Palmer negligently struck Nelson's vehicle, allegedly causing Nelson

personal injury and damaging her vehicle.[1]  Nelson sought recovery from defendants for the medical expenses, property damage, and lost earnings she claimed she incurred as a result of the collision.

{¶ 3}  State Farm answered Nelson's complaint and filed a cross-claim against Palmer and Haas.  In its cross-claim, State Farm stated that it "believe[d] that it has uninsured/underinsured motorist coverage, property damage coverage, and medical payments coverage.  State Farm may have to pay on uninsured/underinsured motorist coverage, property damage coverage, and/or medical payments coverage."[2]  (Oct. 24, 2018 Cross-Claim at 4.)  State Farm thus asserted subrogation claims against Palmer and Haas.

{¶ 4}  On December 14, 2018, State Farm served interrogatories and document requests on Nelson.  When Nelson did not respond, State Farm sent two letters to Nelson—in January and March 2019—seeking the outstanding discovery.  Nelson did not reply to either letter.  Consequently, on April 24, 2019, State Farm moved for an order compelling Nelson to respond to its discovery requests.

{¶ 5}  In its motion, State Farm explained the instant case was a refiled case, and Nelson had received the discovery requests at issue in the original case.  Before her responses were due in the original case, the trial court dismissed the case because Nelson had ignored an order to show cause as to why the case should not be dismissed for want of prosecution.

{¶ 6}  On May 17, 2019, State Farm withdrew its motion to compel.  According to State Farm, Nelson hired an attorney who assured State Farm Nelson would respond to the discovery requests within the next 30 days.  State Farm ultimately received the outstanding discovery in early August 2019.

{¶ 7}  On August 15, 2019, the trial court granted a joint motion for continuance of the trial date.  On April 20, 2020, the trial court granted another joint motion for continuance of the trial date.

---

[1] In her deposition, Nelson testified Palmer's vehicle actually collided with the rear of a second vehicle, which in turn collided with the rear of Nelson's vehicle. Nelson named Haas as the driver of the second vehicle in her opening statement at trial.

[2] Presumably, State Farm meant to state that it believed *Nelson* had uninsured/underinsured motorist coverage, property damage coverage, and medical payments coverage. Moreover, by alleging that it may have to pay on the coverages it believed it provided to Nelson, State Farm implicitly acknowledged that Nelson asserted a claim in her complaint for recovery under those coverages.

**{¶ 8}** Then, on July 29, 2020, Nelson's attorney moved to withdraw because he "was advised by [Nelson] that [he] should no longer represent [her] in the underlying litigation and should immediately file a motion to withdraw as counsel." (July 29, 2020 Mot. to Withdraw at 2.) The trial court granted that motion the next day.

**{¶ 9}** Five months later, on January 5, 2021, the trial court issued an order to show cause in which the trial court observed that Nelson had failed to retain new counsel or contact the court or opposing counsel. The court ordered Nelson to show good cause why the court should not dismiss her action for failure to prosecute.

**{¶ 10}** In her response to the show cause order, Nelson explained that her poor health and complications caused by the COVID-19 pandemic prevented her from engaging another attorney. Nelson claimed she attempted to settle her claim with State Farm, and she expressed willingness to participate in mediation.

**{¶ 11}** The trial court referred the matter to a magistrate for mediation, but no resolution resulted from the mediation. However, the parties were able to agree that State Farm would depose Nelson on June 4, 2021.

**{¶ 12}** The day before Nelson's deposition was scheduled to proceed, Nelson sent State Farm's attorney an e-mail that stated she had an unforeseen emergency and would have to reschedule. Nelson advised State Farm's attorney she was available for her deposition on August 11, 2021. Approximately five minutes before the August deposition was scheduled to begin, Nelson sent an e-mail requesting a continuance so she could hire an attorney.

**{¶ 13}** On September 28, 2021, State Farm moved for a status conference. In the motion, State Farm explained to the trial court the difficulty it encountered securing Nelson's deposition. State Farm also reminded the trial court that the case had been pending for three years and no trial date was scheduled. The trial court granted the motion and scheduled a status conference for October 19, 2021.

**{¶ 14}** At the status conference, the trial court set trial for February 14, 2022 and warned the parties that "[g]iven the age of the case, * * * I'm not going to continue that February 14 trial date outside of some extraordinary circumstance. This case needs to be resolved." (Oct. 19, 2021 Tr. at 7.) With the parties' agreement, the trial court scheduled November 23, 2021 as the date for Nelson's deposition.

{¶ 15} The trial court memorialized the trial and deposition dates in an October 19, 2021 entry. On November 23, 2021, Nelson's deposition finally proceeded as scheduled.

{¶ 16} Prior to trial, State Farm filed three written motions in limine. First, State Farm moved to preclude any evidence regarding Nelson's alleged lost wages or impairment of earnings capacity. In its document requests, State Farm asked that Nelson provide "[v]erification for lost wages including W-2's and income tax statements from 2005 to the present and a lost wage verification statement from * * * Nelson's employer." (Deft.'s Req. for Produc. of Docs. at 3.) Nelson provided no documents, but stated she would supplement her response. After her deposition, Nelson represented to State Farm that she had "reach[ed] out to [her] former employer to attempt to obtain related documents/information if possible, considering it has been several years ago :2015.... I do not have my employment records." (Feb. 8, 2022 Mot. In Limine, Ex. K at 2.) State Farm argued it would be unfair to allow Nelson to attempt to recover lost wages when she failed to provide State Farm with the documents it requested.

{¶ 17} Second, State Farm moved to exclude evidence regarding damage to Nelson's vehicle. In its document requests, State Farm asked Nelson to provide "[a]ny other documents in the possession of [Nelson] or her attorneys relating to the claims set forth in the Complaint." (Deft.'s Req. for Produc. of Docs. at 4.) Although she turned over no documents in response to this request, Nelson agreed to supplement her response. After Nelson's deposition, State Farm's attorney asked Nelson for a copy of the auto repair estimate completed after the February 11, 2015 collision. Nelson replied "[t]he estimate for property damage should be in the file of State Farm's claim adjuster where the medical bills and all requested info was sent prior to filing in court. It has been several years since the estimate was done and I am unable to locate it. I reach[ed] out to a few places who stated they had no record in the system with the age of the report being a key factor." (Deft.'s Ex. K at 2.)

{¶ 18} In its motion to exclude evidence regarding damage to Nelson's vehicle, State Farm represented that Nelson never provided it with the auto repair estimate. According to State Farm, as a sanction for her failure to respond to its discovery request, the trial court should preclude Nelson from producing evidence of her property damage at trial.

{¶ 19}  Finally, State Farm moved to exclude the evidence of medical opinions and diagnoses of non-testifying medical professionals.  State Farm argued the trial court should not allow Nelson to admit documents that contain medical opinions or diagnoses without meeting the Evid.R. 803(6) hearsay exception.

{¶ 20} A jury trial on Nelson's action commenced on February 14, 2022.  At the beginning of the proceedings, Nelson informed the trial court she would be representing herself. The trial court then turned to addressing the pre-trial motions State Farm had filed.

{¶ 21} The trial court denied in part and granted in part State Farm's motion to preclude evidence regarding Nelson's lost wages and impairment of earnings.  The court determined Nelson could testify about the time she was absent from work, but the court excluded from evidence all documentation that Nelson did not provide State Farm in discovery.

{¶ 22} The trial court granted State Farm's motion to exclude evidence regarding Nelson's property damage.  The court found Nelson violated Civ.R. 26 by not producing the documents requested, and sanctioned Nelson by prohibiting her from testifying regarding the damage to her vehicle.

{¶ 23} The trial court then turned to the third motion in limine, which requested limitation of the medical records the jury could consider.  The trial court asked Nelson whether she planned to call any of the medical professionals who treated her as trial witnesses.  Nelson told the court she had not subpoenaed any medical professionals, and she intended to rely on her medical records to prove her personal injuries and damages. The trial court ruled it was "not permitting any of the medical records to come in unless there's a medical provider who can testify to them, or, you know, a keeper of the records from the hospital who can testify about them." (Feb. 14, 2022 Tr. at 10.) Nelson responded she was previously "unaware [she had] to have a medical professional here to testify with the records."  (Feb. 14, 2022 Tr. at 10.)  Nelson then stated she "definitely needed" to introduce her medical records as evidence because they were "a big factor in determining how much was owed for the medical bills."  (Feb. 14, 2022 Tr. at 10.)  The trial court reiterated that "a medical professional is going to have to set a foundation for why those records * * * fall into an exclusion to the hearsay rule."  (Feb. 14, 2022 Tr. at 10.)

{¶ 24} In her opening statement, Nelson told the jury she had "been damaged, on many levels, forever from the accident that occurred on February 11th, 2015." (Feb. 14, 2022 Tr. at 28.) Nelson, however, also alluded to her inability to provide the jury with evidence to establish that damage. She informed the jury, "[t]here is evidence regarding this accident that occurred on February 11th, 2015, that I will not be able to provide to you because the --." (Feb. 14, 2022 Tr. at 32.) At this point, State Farm's attorney objected. The trial court struck this part of Nelson's opening statement, explaining to the jury, "[t]he Rules of Evidence are designed for a reason. It is the Court's job to make sure that the Rules of Evidence are followed. And I will not permit any party to make reference to evidence that the Court has stricken according to those Rules of Evidence." (Feb. 14, 2022 Tr. at 32.)

{¶ 25} At the conclusion of Nelson's opening statement, State Farm moved for a directed verdict. In relevant part, State Farm argued that "[i]f the plaintiff cannot establish injuries and damages, she can't prevail on [her] case." (Feb. 14, 2022 Tr. at 34-35.) Nelson responded that she had "medical bills that [she] intended to present to prove the costs of the bills * * *, as well as medical records to show the injuries that [she] sustained[.] * * * However, as a result of the medical professional not being here to testify, that is why it is not allowed into evidence." (Feb. 14, 2022 Tr. at 35.)

{¶ 26} The trial court granted State Farm's motion for directed verdict. In doing so, the trial court stated:

> [M]edical professionals will not be testifying about the medical records and, therefore, those medical records will not be introduced in this case.
>
> * * *
>
> The Court finds that due to these exclusions or unavailability of that evidence that Ms. Nelson referred to in her opening statement that the Court had stricken from the record * * * there will not be evidence presented that Ms. Nelson suffered damages regarding this alleged car accident from 2015. Therefore, I believe the directed verdict is appropriate.

(Feb. 14, 2022 Tr. at 38.) The trial court entered a written judgment awarding State Farm a directed verdict on February 17, 2022.

## II. Assignments of Error

{¶ 27} Nelson now appeals the February 17, 2022 judgment, but she does not assign any errors in her appellate brief as required by App.R. 16(A)(3). Because courts of appeal determine each appeal "on its merits on the assignments of error set forth in the briefs under App.R. 16," assignments of error constitute an integral, indispensable element of an appeal. App.R. 12(A)(1)(b). *In re J.P.*, 10th Dist. No. 18AP-834, 2019-Ohio-1619, ¶ 16; *Pack v. Hilock Auto Sales*, 10th Dist. No. 12AP-48, 2012-Ohio-4076, ¶ 13; *Curry v. Curry*, 10th Dist. No. 10AP-437, 2010-Ohio-6536, ¶ 10. Nevertheless, an appellant's failure to assign error does not invariably doom an appeal. In the absence of assignments of error, a court of appeals may construe the issues presented as assignments of error. *J.P.* at ¶ 18; *Benchmark Bank v. Kimberly Office Park*, *L.L.C.*, 10th Dist. No. 15AP-770, 2016-Ohio-8338, ¶ 12; *Pack* at ¶ 14; *Curry* at ¶ 11. We will do that in this case. Thus, Nelson assigns the following errors for our review:

> 1. Was it error for the Trial Court to order a directed verdict in favor of Appellee following Plaintiff's opening statement? when Appellant did not state in her opening statement she would not be able to present her case?
>
> 2. Was it error for the Trial Court grant in part Appelle's motion in limine to exclude and preclude evidence and testimony of Appellant's Lost Wages or Impairment of Earnings?
>
> 3. Was it error for the Trial Court to grant Appelle's motion to exclude Appellant reference to propperty damage claim by applying Civil Rule 26 stating Appellant vioalated this rule by nit providing documents related to the property damage claim?
>
> 4. Was it error for the Trial Court to grant Apelle's motion in limine to exclude evidence of medical records upon its findings under Evid. Rule 803(4) without a further foundation by a medical provider or keeper of records?
>
> 5. Was it error for the Trial Court to grant Appelle's oral motion to exclude evidence of ongoing pain and discomfort based upon its finding Appellant did not provide documentation of injuries and treatment related to a 2018 hospital date?

6. Was it error for the Trial Court to refuse to allow Appellant's offer of proof to provide for inspection to the Trial Court, and Appelle a 2021 EMG report for Doctor Simon Appellant had in her vehicle Appellant was willing to obtain because it was not apart of evidence Appellat was to present at trial in which the record falsely reflects as a 2018 hospital date which was never requested from Appellant, was requested by Appelle instead?

7. Was it error for the Trial Court to reserve ruling on Appelle's oral motion to preclude testimony of Soft Tissue Injury?

8. Was it error for the Trial court not to order a Summary Judgemnet sua sponte when Appelle failed to respond to plaintiff's summons and complaint within twenty days as required by civil Rule

9. Was it error for the Trail Court not to have a Rule 26 hearing/pretrial hearing before applying sanctions for failure to disclose at trial?

10. Was it error to grant Appellee's dierected verdict when Appellee did not state facts to support its affirmative defense's, and did not prove all of the essential elements of atleast one of its affirmative defenses in which no cross claim against plainrtiff was asserted from which defendant could seek relief?

11. Was it error for the Trial Court to order a directed verdict before Plaintiff presented her case in chief?

12. Was it error for the Trial Court to allow Appellee's attorney to testify about the extent of Appellant's medical injuries, reducing them to soft tissue injuries only, without requiring a proper evidentiary foundation?

13. Was it error for the Trial Court to allow Appellee to use the depositoin as evidence in it's motions in limine when it was not filed with the court prior to trial, and not given to plaintiff before discovery deadline timely when plaintiff requested it during discovery by the deadline and judge was aware plaintiff did not have a copy of the deposition and provided it to plaintiff at the beginning of trial without imposing rule 26 sanction on Appelle, but impose rule 26 sanction's on Appellant?

14. Was it error for the Trial Court in not instructing the jury the court defined negligence as "a failure to use ordinary care" and if the jury was to find the assured clear distance rule applies and was violated, then the jury must find that the driver, codefendant Catherine Palmer, was negligent?

15. Was it error for the Trial Court to Sustain Appelle's objection to not allow Appellant's statement that codefendant Catherine Palmer was charged and pled guilty, per plea" to an ACDA traffic violation during Appellant's opening statement?

(Sic passim.)

## III. Analysis

{¶ 28} Before we address the merits of Nelson's assignments of error, we must consider three additional procedural issues raised by irregularities in Nelson's briefing. First, State Farm has moved to strike allegations and arguments contained in Nelson's appellate brief that are based on documents Nelson filed with the trial court after it granted the directed verdict. Nelson, indeed, includes in her brief facts from documents that were not part of the trial court record on the date the court entered the judgment now on appeal.

{¶ 29} This court has repeatedly held that appellate review is limited to the record as it existed at the time the trial court rendered its judgment. *Roote v. Hibernia Apts., I, L.L.C.*, 10th Dist. No. 19AP-680, 2020-Ohio-5401, ¶ 11; *State Farm Fire & Cas. Co. v. Capital Roofing, L.L.C.*, 10th Dist. No. 18AP-689, 2020-Ohio-642, ¶ 50; *Hopkins v. Car Go Self Storage*, 10th Dist. No. 18AP-715, 2019-Ohio-1793, ¶ 11; *Pratt v. Univ. of Cincinnati*, 10th Dist. No. 17AP-729, 2018-Ohio-2162, ¶ 26. An appellate court cannot consider evidence that a party added to the trial court record after that court's judgment, and then decide an appeal from the judgment based on the new evidence. *Roote* at ¶ 11; *State Farm Fire & Cas. Co.* at ¶ 50; *Hopkins* at ¶ 11; *Pratt* at ¶ 26. We, therefore, will not consider any documents Nelson filed with the trial court after that court entered judgment granting State Farm a directed verdict on February 17, 2022. In light of the restraint we will exercise, we find an order striking portions of appellant's brief unnecessary, and we deny State Farm's motion to enter such an order.

{¶ 30} Next, we turn to State Farm's motion to strike Nelson's reply brief. Excluding the cover page, table of contents, table of authorities, signature block, and certificate of service, Nelson's reply brief is 178 pages in length. Loc.R. 8(B) of the Tenth District Court

of Appeals provides that "a reply brief shall not exceed 20 pages." Moreover, Loc.R. 8(B) unambiguously warns parties that "[i]n no circumstances shall a reply brief in excess of 20 pages be permitted." Nelson's reply brief grossly exceeds the mandatory page limitation. We thus grant State Farm's motion and strike the reply brief from the record.

{¶ 31} Finally, we must address the paucity of the argument section of Nelson's brief. Although Nelson raises 15 assignments of error, she only advances an argument in support of one.

{¶ 32} " 'The burden of affirmatively demonstrating error on appeal rests with the party asserting error.' " *James v. My Cute Car, L.L.C.*, 10th Dist. No. 16AP-603, 2017-Ohio-1291, ¶ 10, quoting *Lundeen v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-629, 2013-Ohio-112, ¶ 16. To demonstrate error, an appellant's brief must contain "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions." App.R. 16(A)(7). If an appellant fails to argue an assignment of error separately in the brief, as required under App.R. 16(A)(7), a court of appeals may disregard that assignment of error. App.R. 12(A)(2). Because Nelson does not argue her 2nd through 15th assignments of error at all, we will disregard those assignments of error. *See Corso Ventures, L.L.C. v. Paye*, 10th Dist. No. 21AP-510, 2023-Ohio-127, ¶ 25 (disregarding an assignment of error not separately argued in an appellant's brief); *J. Griffin Ricker Assocs., L.L.C. v. Well*, 10th Dist. No. 21AP-29, 2022-Ohio-1470, ¶ 14 (disregarding 3 assignments of error not separately argued in an appellant's brief). Accordingly, we overrule the 2nd through 15th assignments of error.

{¶ 33} Having dealt with the preliminary procedural issues, we turn to Nelson's first assignment of error. By that assignment, she argues the trial court erred in granting State Farm a directed verdict after her opening statement. We disagree.

{¶ 34} A party may move for a directed verdict after an opponent's opening statement. Civ.R. 50(A)(1); *Parrish, Admr. v. Jones*, 138 Ohio St.3d 23, 2013-Ohio-5224, ¶ 15. When a party makes such a motion, a trial court must "exercise great caution in sustaining the motion," and "liberally construe the opening statement in favor of the party against whom the motion is made." *Id.* at ¶ 25. A court will grant a motion for directed verdict made after an opening statement when it is " 'clear that all the facts expected to be

proved, and those that have been stated, do not constitute a cause of action or a defense.' " *Id.* at ¶ 32, quoting *Brinkmoeller v. Wilson*, 41 Ohio St.2d 223 (1975), syllabus.

{¶ 35} If a party makes a statement during the opening statement that indicates the party will be unable to sustain its claim or defense at trial, the court should grant a directed verdict. *Id.* at ¶ 27, 32. This may occur, for example, when a plaintiff admits an affirmative defense that bars a claim or states explicitly that the evidence will not prove a certain element of a claim. *Id.* at ¶ 27. "[A] party cannot sabotage its own case during opening statement and expect to prevail against a motion for directed verdict." *Id.* at ¶ 34.

{¶ 36} If it is unclear from the opening statement whether the party against whom the motion for directed verdict is made can proceed with its case, the trial court "must determine whether that party has otherwise set forth a cause of action or defense." *Id.* at ¶ 33. At this point, the trial court may choose to look beyond the opening statement. *Id.* "If the court considers *all information before it*, such as the opening statement and the pleadings, and finds that what the party has set forth constitutes a claim or defense, the court should deny the motion." (Emphasis added.) *Id.* at ¶ 34. Alternatively, if the trial court determines from all the information before it that "all the facts expected to be proved, and those that have been stated, do not constitute a cause of action or a defense," the court should grant the motion. *Brinkmoeller* at syllabus.

{¶ 37} Nelson stated in her opening statement that Palmer was an uninsured motorist. Although Nelson failed to unambiguously articulate a cause of action against State Farm in her complaint, State Farm does not contest that Nelson sought recovery under the uninsured motorist coverage in her State Farm insurance policy. An insured seeking to recover under uninsured motorist coverage must "prove all elements of the insured's claim that are necessary to recover from the owner or operator of the uninsured or underinsured motor vehicle." R.C. 3937.18(D); *accord Davie v. Nationwide Mut. Ins. Co.*, 8th Dist. No. 101285, 2015-Ohio-104, ¶ 11 (holding that to recover against an insurer under uninsured motorist coverage, the plaintiff must prove the elements of negligence against the driver of the allegedly negligent vehicle). To recover from Palmer—the operator of the uninsured vehicle—for negligence, Nelson had to prove: (1) the existence of a duty, (2) breach of that duty, (3) an injury proximately resulting from the breach, and

(4) damages. *See Cromer v. Children's Hosp. Med. Ctr. of Akron*, 142 Ohio St.3d 257, 2015-Ohio-229, ¶ 23 (setting forth the elements of a negligence claim).

{¶ 38} Here, Nelson introduced uncertainty regarding whether she would be able to adduce evidence to prove she suffered injury and damages when she stated: "There is evidence regarding this accident that occurred on February 11th, 2015, that I will not be able to provide to you because the --." (Feb. 14, 2022 Tr. at 32.) Thus, based on Nelson's opening statement, it was unclear whether she could proceed with her cause of action. The trial court, therefore, could exercise its discretion to consider "all information before it" beyond the opening statement in deciding the motion for directed verdict. *Parrish* at ¶ 34. Therefore, here, the trial court could include in its consideration Nelson's admissions regarding what evidence she intended to rely on at trial, as well as the pre-trial rulings excluding certain evidence.

{¶ 39} Outside of her opening statement, Nelson confirmed to the trial court she intended to prove her personal injuries and damages through her medical records and bills. The trial court, however, ruled those documents inadmissible because Nelson failed to secure the necessary witnesses to authenticate the documents and satisfy the requirements of a hearsay exception. Without the medical records and bills she intended to rely on, Nelson could not prove personal injury or the amount of her medical expenses. Furthermore, at the pre-trial hearing on the motions in limine immediately prior to trial, regarding whether she was going to call to testify any of the doctors or nurses who treated her, Nelson replied "at this time, no, I have not called for the witnesses." (Feb. 14, 2022 Tr. at 9.)

{¶ 40} With regard to the injury to her property, Nelson admitted she could not locate the estimate of the amount of damage done to her vehicle in the February 11, 2015 collision. Nelson did not intend to call any automobile repair expert at trial to testify as to her property damage. (*See* Feb. 14, 2022 Tr. at 23, Nelson admitted she only intended to call the tortfeasor and herself, but the tortfeasor did not attend trial, so Nelson could not call her as a witness.) Nelson could not testify as to the damage to her vehicle because the trial court barred her from testifying on that matter as a discovery sanction. Nelson, therefore, had no evidence to offer to prove injury or the amount of damages to her property.

{¶ 41} Finally, Nelson sought to recover the income she allegedly lost because of her personal injuries. However, as Nelson could not prove she suffered personal injury, she could not prove entitlement to lost income because of personal injury.

{¶ 42} In sum, under the unique circumstances of this case, Nelson conceded to the trial court that she lacked the evidence necessary to prove her negligence claim in the pre-trial proceedings and in responding to State Farm's motion for directed verdict. The lack of clarity in Nelson's opening statement regarding whether she could proceed with her negligence claim led the trial court to consider her concessions in determining the directed verdict motion. The trial court did not err in finding that all the facts Nelson expected to prove did not constitute a cause of action. Accordingly, on the facts of this case, we conclude the trial court did not err in granting State Farm a directed verdict, and we overrule the first assignment of error.

## IV. Conclusion

{¶ 43} For the foregoing reasons, we overrule appellant's 15 assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas. We deny State Farm's motion to strike portions of Nelson's brief, but we grant State Farm's motion to strike the reply brief.

*Judgment affirmed;*
*motion to strike portions of appellant's brief denied;*
*motion to strike reply brief granted.*

BEATTY BLUNT, P.J., and LELAND, J., concur.